739 So.2d 803 (1999)
SECURITY FIRST NATIONAL BANK, Plaintiff-Appellee,
v.
John Paris MURCHISON, et ux., Defendants-Appellants.
No. 98-1255.
Court of Appeal of Louisiana, Third Circuit.
March 17, 1999.
Rehearing Denied May 12, 1999.
*804 John W. Munsterman, Alexandria, for Security First National Bank.
Charles Overton LaCroix, Alexandria, for John Paris Murchison, et al.
Ricky L. Sooter, Alexandria, for William Earl Hilton, Sheriff.
BEFORE: COOKS, SAUNDERS, and GREMILLION, Judges.
COOKS, Judge.
John Paris Murchison and Jola, Inc., appeal the trial court's decision annulling two tax sales for lack of appropriate notice to the creditor, Security First National Bank. For the reasons assigned below, we affirm.

BACKGROUND FACTS AND PROCEDURAL HISTORY
On May 6, 1983, Darrel Van Willet, Jr., executed a $1,000,000.00 collateral mortgage in favor of Security First National Bank ("Security") which was filed and recorded that same day. The mortgage encumbered several developed lots in the Woodland Heights subdivision, located in Rapides Parish.
On July 10, 1987, Willet again granted Security a collateral mortgage representing an indebtedness of $1,000,000.00. The property encumbered by this mortgage were two undeveloped tracts of land referred to as the 35 acre tract and the 65 acre tract.
*805 Willet failed to pay the 1989 property taxes on all of the mortgaged property. Subsequently, on July 18, 1990 at a tax sale, Jola, Inc., purchased both the Woodland Heights lots and the 65 acre tract. Jola purchased the Woodland Heights lots for $1,510.00 and the 65 acre tract for $162.08. Security did not receive actual notice of the two tax sales prior to or following the conveyances. The tax sales, however, were advertised in the local newspaper. Eight days after the transaction, the tax sales deeds for both properties were filed and recorded by the Sheriff. These deeds each contained a provision declaring that the owner shall have the right to redeem the property at any time within three years beginning on July 26, 1990, and, if the sales were not redeemed, the conveyance would operate as a cancellation of all conventional and judicial mortgages.
On May 8, 1991, because Jola failed to pay the 1990 property taxes, the 65 acre tract was sold again at a tax sale. The purchaser was John Paris Murchison who, at this time, with his wife owned all of Jola, Inc.'s outstanding stock. The tax sale deed evidencing this transaction was filed and recorded on May 24, 1991.
A year later, when Murchison failed to pay the 1991 property taxes, the 65 acre lot was sold at yet another tax sale. This time the purchaser was Roderick Murchison. Thereafter, Roderick Murchison neglected to pay the 1992 property taxes and the 65 acre lot was sold at a tax sale to Alvis Book on May 5, 1993.
On January 4, 1994, Security filed a foreclosure suit against all of the property described in both the May 6, 1983 and July 10, 1987 collateral mortgages. For the first time, Security discovered the various tax sales. Three months later, on March 30, 1994, the Sheriff adjudicated the 35 acre tract and the 65 acre tract to Security. At the time of the foreclosure sale, Security paid the 1993 property taxes on the 65 acre tract, which had not been paid by Book. Security also redeemed: (a) the tax sale in favor of John Murchison for the 1990 taxes, (b) the tax sale in favor of Roderick Murchison for the 1991 taxes and (c) the tax sale in favor of Book for the 1992 taxes. Security, despite their awareness of the transactions, did not attempt to redeem the July 18, 1990 tax sales. Two years later in May 1996, Security endeavored to redeem the July 18, 1990 tax sales by offering to pay the taxes, all costs and interest thereon to Murchison, whom the property had been transferred to by Jola. The impetus for Security's action was a potential buyer who agreed to purchase the property only after its title had been disencumbered. Murchison refused to accept Security's offer, noting that the three-year period for redemption had expired; and, as such, he was unwilling to acquiesce to Security's untimely offer to redeem the properties.
In response to Murchison's refusal, Security filed a Petition to Annul Tax Sale, seeking to cancel the two tax sales. Specifically, Security urged it did not receive proper notice prior to the sales. After taking the matter under advisement and after submission of post-trial memorandum, the trial court voided the two tax sales subject to payment of the funds advanced by the tax purchaser together with the required interest due on the funds. Subsequently, Murchison filed a motion for new trial. The motion was denied. This appeal now follows.

ASSIGNMENTS OF ERROR
Murchison and Jola (collectively referred to as Murchison) now assign the following errors for review:
1. Having decided that the "seizing creditor" had no constitutional duty to provide actual notice to Security Bank, the Trial Court erred in setting aside the sale because of lack of notice.
2. Having determined that Security Bank waited until at least two years after it gained knowledge of the tax sale, *806 the Trial Court erred in not holding their claim to be prescribed.

LAW AND ANALYSIS

Security's Right to Notice
In Murchison v. Marzullo, 97-815 (La.App. 3 Cir. 12/10/97); 705 So.2d 1129, this Court recognized a mortgagee's right to notice reasonably calculated to apprise him of a pending tax sale. Our holding was based on the United States Supreme Court's decision in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Citing its previous decision in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865(1950) the Supreme Court held:
[P]rior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."
Mennonite, 462 U.S. at 795, 103 S.Ct. 2706. Essentially, Mullane and Mennonite attempted to balance the interest of the state against the individual's property interest protected by the Fourteenth Amendment. Whether the notice provided by the state is reasonable depends on the circumstances of the case. Tulsa Professional Collection Services v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988) Even so, the Supreme Court made clear:
When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane.

Mennonite 462 U.S. at 798, 103 S.Ct. 2706.
With this holding in mind, we turn to address Murchison's first contention that the Sheriff had no duty to provide actual notice to Security. Murchison cites the Federal Fifth Circuit Court of Appeal decision in Davis Oil Company v. Mills, 873 F.2d 774 (5 Cir.1989). In Davis Oil, the Court considered whether a senior creditor's foreclosure sale was valid even though the complainant, a mineral lessee, was not provided with actual notice of the seizure and impending sale. The only notice provided, an advertisement in a local newspaper, was constructive notice. Davis argued this communication was insufficient. As such, he alleged that his due process rights had been violated. Relying on Mennonite, Davis urged the holder of a legally protected property interest must be provided with actual notice before being deprived of the interest by the State. The Court, however, refused to adopt a rigid interpretation of the holding in Mennonite. Instead, it reiterated the Mullane and Mennonite flexible standard for determining whether the State has satisfied its constitutional obligation to provide notice. The Court stated:
... a reviewing court must "balanc[e] the `interest of the State' and the `individual interest sought to be protected by the Fourteenth Amendment.' ... The focus is on the reasonableness of the balance, and, as Mullane itself made clear, whether a particular method of notice is reasonable depends upon the particular circumstances."
Davis, 873 F.2d at 788 (citing Tulsa, 108 S.Ct. at 1341-42). The Court then declared that "the seizing creditor is not required to determine conclusively which party interests are in fact viable." Davis, 873 F.2d at 788. "Rather, the creditor is required, only to undertake "reasonably diligent efforts" to identify and provide notice to parties having an interest in the subject property." Id. (citing Pope, 108 *807 S.Ct. at 1348). Applying this standard, the Court in that instance found "reasonable diligence" did not require the seizing creditor to search the public records or send actual notice. It held the use of constructive notice was sufficient to satisfy the constitutional burden imposed on the seizing creditor. Murchison encourages us to employ such a "balancing test" in resolving the present dispute. Specifically, he argues that the Sheriff was not required to give actual notice of the tax sales because: (a) the burden placed on the Sheriff to conduct a search is unwarranted, (b) the search would have been fruitless, (c) Security could have protected its rights by requesting notice from the Sheriff and (d) the Sheriff could reasonably have expected Security to have checked the taxes to determine if they were paid.
As the Fifth Circuit cautioned, the Davis holding did not dispense with the "reasonableness inquiry" announced in Mullane and Mennonite. Clarifying Mennonite, the Court noted the holding in that case did not require actual notice in every instance prior to the divestiture of an individual's legally protected property interest. Davis, thus, did not overrule nor depart from the holdings in Mullane and Mennonite.
Facing facts virtually identical to the present, the Supreme Court in Mennonite held actual notice was a necessary precondition. We find the facts in Davis were different. Davis was a mineral lessee who had acquired his interest in the subject land through assignment. The Court found, in Louisiana, it was particularly complex to identify Davis as holder of a mineral interest through a search of the parish conveyance records, pointing out:
If a piece of property is subject to multiple leases, or if the interest in a single lease has been divided and assigned to different entities (as it in fact was in this case), the search for those with an interest in the property would require far more than an initial search of the conveyance records in the name of the owner of the subject property. The creditor would have to trace in turn the conveyance records of each subsequent assignee. Far from being a simple, 24 minute undertaking, a search of the conveyance records for the mineral interests on a single piece of property could resemble a rather large tree with several limbs and innumerable branches. Thus, even if the creditor makes no attempt to determine the actual validity of a particular lease, the process of merely identifying those who might have an interest in a mineral lease could itself be extremely cumbersome.
Davis, 873 F.2d at 789 (emphasis in original). The Davis Oil Court was concerned with the sinuous search which had to be performed to identify the particular mineral lessee. From the Court's view, such would require the State to engage in a "potentially fruitless search." Id. Thus, the Court held it was unreasonable to place this burden on the State. This concern fades, however, when the State has to identify a mortgagee who is listed in a publicly recorded mortgage. As opposed to identifying mineral interest holders, the search for the holder of a publicly recorded mortgage requires only the routine examination of land records"a simple 24 minute undertaking." Id. This is simply a facile task. In these instances, because it is feasible to give actual notice, providing the holder of a property interest with constructive notice only is patently "not enough." When the State is not required to "wend its way through a potentially complex maze of leases and assignments in order to identify interested parties," actual notice is the minimum constitutional precondition to a proceeding which will adversely affect a property interest protected by the Due Process Clause of the Fourteenth Amendment. Davis, 873 F.2d at 790.

Do the Mortgages Reasonably Identify Security as Mortgagee?
Security's right to actual notice of the July 18, 1990 tax sales depends on *808 whether its status as mortgagee was reasonably ascertainable from the mortgages. An interest holder is "reasonably ascertainable" if its identity or address can be extracted from a reading of the publicly recorded instrument. Mennonite, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180; Smith v. Brooks, 97-1338 (La.App. 3 Cir. 4/15/98); 714 So.2d 735. The instant case involves two collateral mortgage notes executed more than four years apart. The first collateral mortgage, executed on May 6, 1983, encumbering the Woodland Heights property is reproduced below in relevant part:

*809 The second collateral mortgage dated July 10, 1987, encumbering the 65 acre undeveloped tract follows:

Security's identity and status are "reasonably ascertainable" from a reading of the face of the mortgages. Both its name and address are prominently listed in these two documents. The only difference in these mortgages is that Security stamped its name below "ANY FUTURE HOLDER OR HOLDERS" at the bottom of the July 10, 1987 collateral mortgage but neglected to do so on the May 6, *810 1983 mortgage. However, because Security is conspicuously listed in the upper portion of the note, this flaw is not fatal. As a result, extraordinary efforts were not required to discover the identity of the mortgagee in either instance. As Mennonite instructs, constructive notice of the two tax sales should have been supplemented by actual notice to Security. "When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee ..." Mennonite, 462 U.S. at 798, 103 S.Ct. 2706. The State's failure to give appropriate notice rendered the tax sales absolute nullities.

Security's Expertise as a Creditor
Murchison further argues Security's expertise "somehow" should place an added burden on it to stay apprised of all tax sales affecting property to which it claimed ownership. Accordingly, he contends constructive notice was sufficient to deprive Security of its legally protected property interest in both the Woodland Heights tract and the 65 acre tract sold at the tax sale.
We disagree with Murchison's contention. Security's constitutional entitlement to actual notice is not diminished because of its sophistication as a creditor. In Mennonite the Court declared:
Personal service or mailed notice is required even though sophisticated creditors have means at their disposal to discover whether property taxes have not been paid and whether tax sale proceedings are therefore likely to be initiated. In the first place, a mortgage need not involve a complex commercial transaction among knowledgeable parties, and it may well be the least sophisticated creditor whose security interest is threatened by the tax sale. More importantly, a party's ability to take steps to safeguard its interests does not relieve the State of a constitutional obligation. It is true that particularly extensive efforts to provide notice may often be required when the State is aware of a party's inexperience or incompetence.... But it does not follow that the State may forgo even the relatively modest administrative burden of providing notice by mail to parties who are particularly resourceful....
Mennonite, 462 U.S. at 799-800, 103 S.Ct. 2706. Thus, this argument is without merit.

Is Security's Claim of Annulment Barred by Prescription?
Finally, Murchison argues, even if Security was entitled to receive actual notice, this Court should not recognize its claim for annulment. He alleges Security waited too long to bring suit to set aside the tax sales. According to Murchison, there ought to be a limit on a mortgagee's ability to set aside a tax sale. His contention is grounded on Louisiana's historical public interest in identity and marketability of land titles. Harris v. Estate of Fuller, 532 So.2d 1367 (La.1988).
This Court recognizes "[i]t is a long-standing public policy in this state to make certain and protect the title to immovable property." Harris v. Estate of Fuller, 532 So.2d 1367, 1370 (La.1988). There can be no doubt that the public has a strong interest in the security of titles, which may well outweigh the individual's interest in litigating a dispute. Comment, Legal Rights and the Passage of Time, La.L.Rev. 220, 242 (1980). This public interest is the rationale for adopting La. Const. Art. VII, § 25(C) which provides a five year peremptive period for annulling a defective tax sale. This constitutional provision announces the public policy of this state to set at rest tax titles once and for all. Harris, 532 So.2d 1367 (citing, King v. Moresi, 223 La. 54, 64 So.2d 841 (1953)). This public interest, however, must give way "to the mandate of the U.S. Constitution as interpreted by the U.S. Supreme Court." Murphy v. Estate of Sam, 527 *811 So.2d 1190, 1195 (La.App. 3 Cir.1988). In Murphy, this Court declared the five year peremptive period does not prevent annulment of a tax sale by an interested individual whose right to due process had been violated. We stated:
To the extent that an holding in this case may conflict with prior jurisprudential interpretations of the peremptive period provided by La. Const. Art. 7, Sec. 25(C) it is clear, at least with respect to the peculiar facts and circumstances of this case, that such jurisprudence offends and does not comport with the due process requirements of the 14th Amendment to the U.S. Constitution as set forth by the U.S. Supreme Court in Mennonite Board of Missions v. Adams.

Id. We affirmed this decision in Smith, holding the five year peremptive period did not extinguish a mortgagee's right to sue to annul a defective tax sale 5 years and 8 months after the transaction occurred. The annulment of these defective tax sales advances the elementary and fundamental requirement of due process guaranteed by the United States Constitution which, by virtue of the Supremacy Clause, we are obligated to uphold. Accordingly, even though Security did not file for annulment until six years after the occurrence of the tax sales, prescription does not prevent us from recognizing its claim and rendering a just decision.[1]

DECREE
For the foregoing reasons we affirm the trial court's annulment of the two tax sales. Costs of this appeal are assessed against appellants, John Paris Murchison and Jola, Inc.
AFFIRMED.
NOTES
[1] There may exist a future instance where an individual, whose right to due process was admittedly violated, through willful inaction, wanton neglect, open acquiescence or obvious abandonment forfeits his right to seek judicial redress. Such is not the case here.