DREW, J.
I,MAPOO-NET and Joel Berson appeal a judgment finding that their mineral royalty interest terminated upon the passage of *2 seven years and ordering them to pay attorney fees.
We reverse.
FACTS
The royalty interest at issue burdened land located in Sections 19 and 30, Township 15 North, Range 10 West, of Caddo Parish.
On November 1, 2001, Kathryn Robinson James, through Daniel James, to whom she had granted a general power of attorney in 1998, executed a royalty deed in favor of Michael M. Sale. The land affected consisted of two tracts totaling 603 acres. The tracts were located in Sections 19, 29, 30 and 32 in Township 15 North, Range 10 West in Caddo Parish. The deed stated that the royalty interests to be conveyed were “Fifty(50)% or ½ or 452.25 royalty acres.” The standard printed form royalty deed contained a typewritten insertion that stated the royalty was for a term of seven years. The deed was recorded.
On December 3, 2001, Kathryn James, through Daniel James, executed a royalty deed amendment to define and replace a provision in the subject royalty deed as well as another royalty deed also executed in favor of Sale. The amendment stated that the provision “for a term of seven (7) years” was to be more specifically deemed to be read as:
The rights granted herein shall be subject to an initial period of liberative prescription of seven (7) years from the date hereof. Thereafter, in the event of a cessation of production the period of liberative prescription shall be one (1) year from the date of last production. As modified by the foregoing the rights granted herein shall be subject to the | gprovisions of the Louisiana Mineral Code (La. R.S. 31:1 et seq.) in all other respects.
The amendment was recorded on the same date.
On December 4, 2001, Sale conveyed his royalty interests to the Story Corporation (“Story”). The conveyance did not refer to the amendment executed a day earlier. The act was recorded.
Story did not retain the royalty interests for long. On December 7, 2001, Story conveyed 96% of the mineral interests to MAP00-MGD,[1] and 4% to Joel Berson. The royalty conveyances referenced the December 3, 2001, amendment, and both were recorded.
On January 23, 2002, Sale executed an instrument of recognition and confirmation. He recognized and confirmed the royalty deed amendment as it clarified the term of the mineral royalty interest conveyed to him by the royalty deeds and conveyed by him to Story. The amendment stated that it was to be effective for all purposes as of December 4, 2001. The instrument was recorded.
In 2004, Cecil Blount Farms (“CBF”) purchased a portion of the property burdened by the royalty interests.
On May 15, 2009, the attorney for CBF wrote to Joel and Ann Berson and MAP00-NET that no amendment to the royalty deed was necessary because the royalty had expired. He demanded that the Bersons and MAP00-NET provide, within 30 days, an instrument releasing and canceling the royalty deed as to the CBF property.
IsCBF filed a petition for declaratory judgment and damages against MAP00-NET and Joel and Ann Berson.[2] CBF *3 argued that the 2001 amendment was invalid because no consideration was given, the grantee did not join in the amendment, and it was not an authentic act. CBF contended, therefore, that the royalty deed expired by its own terms on November 1, 2008.
CBF further alleged in the petition that despite following the procedures set forth in La. R.S. 81:206, it had not obtained from defendants a recordable act evidencing extinction of the royalty deed. CBF sought a judgment declaring the royalty deed expired pursuant to its terms and ordering defendants to execute an act evidencing the extinction of the deed. CBF also sought for defendants to be held liable for damages and attorney fees pursuant to La. R.S. 31:206.
CBF filed a motion for summary judgment in which it contended that the plain language of the royalty deed clearly stated it was for a term of seven years, and therefore, any attempt to modify the term without consideration and without the join-der of all parties was null and void.
MAP00-NET and the Bersons filed a cross-motion for summary judgment in which they contended that production commenced from wells on the property or on land pooled with it prior to November 1, 2008, and has continued without interruption. They further contended that the 2001 royalty deed amendment was a valid document because it was signed by 14PanieI James as the authorized agent of ' Katherine James, and his signature was the only signature necessary to make the amendment a valid and enforceable agreement, and because it was recognized and confirmed by Sale pursuant to his instrument of recognition and confirmation.
In support of their cross-motion and to establish interruption of prescription before the lapse of seven years, defendants submitted the affidavit of Tanya LeBlanc, who is employed by Geodata, Inc., and who obtained relevant information from the Office of Conservation. She stated that the well files for unit wells in Section 19 (SU110) and Section 30 (SU111) show that the wells had commenced production in 2006 and 2007 respectively, and had continued without interruption through the last reporting period available, June 2010. Defendants point out in their brief that the unit well for SU 111 is an “on tract” well.
The trial court granted CBF’s motion for summary judgment and denied the defendants’ cross-motion for summary judgment. The court ruled that the royalty deed dated November 1, 2001, terminated pursuant to its included seven-year term on November 1, 2008, and after that date, it had no force and effect. CBF was recognized as the owner of and entitled to all interests, revenues, and/or otherwise, attributable to the royalty deed interests on or after November 1, 2008. The trial court also ruled that the defendants failed to provide the required release despite receiving due demand from CBF. The defendants were ordered to release the royalty deed of record within 10 days .of the date of judgment. CBF was found to be | .^entitled to costs, attorney fees, interest and damages, the amounts of which would be established later by the trial court.
Defendants appealed. The trial court then rendered a supplemental consent judgment in which it recognized that the agreed costs and attorney fees to be awarded to CBF were $44,876.58. Defendants were ordered to post a suspensive appeal bond of $46,503.78, and to deposit all sums received that were attributable to the royalty interest for the period after the *4 termination date into an interest-bearing account to be set up by CBF’s counsel.
Even though the supplemental consent judgment did not affect the merits of the issues in the case, defendants appealed that judgment also in order to contest CBF’s right to an attorney fee. CBF argued that the appeal of the supplemental consent judgment was frivolous and improper, and it prayed that the appeal be dismissed and that defendants be cast for attorney fees and costs.
The second appeal was a devolutive appeal. Both appeals were consolidated by this court.
DISCUSSION
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate, ie., whether there is any genuine 1¿issue of material fact, and whether the movant is entitled to judgment as a matter of law. Id,
La. R.S. 31:16 provides that the basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. A mineral right is an incorporeal immovable. La. R.S. 31:18.
Mineral rights are real rights and are subject either to the prescription of nonuse for 10 years or to special rules of law governing the term of their existence. La. R.S. 31:16. A mineral royalty is extinguished by prescription resulting from nonuse for 10 years. La. R.S. 31:85.
Prescription of nonuse running against a mineral royalty is interrupted by the production of any mineral covered by the act creating the royalty. La. R.S. 31:87. Prescription is interrupted on the date on which actual production begins and commences anew from the date of cessation of actual production. Id.
Mineral Code Articles 72 through 75 regarding conventional alteration of the legal incidents of creation of mineral servi-tudes are applicable to mineral royalties. La. R.S. 31:103. Parties may either fix the term of a mineral servitude or shorten the applicable period of prescription of nonuse or both; if a period of prescription greater than 10 years is stipulated, the period is reduced to 10 years. La. R.S. 31:74.
MAP00-NET and Joel Berson argue on appeal that the trial court should have determined that the original deed was for a shortened prescriptive period of seven years and not for a fixed term of seven years. |7They further argue that the amendment and the recognition and confirmation should have been recognized by the court.
CBF counters that the original deed was clearly for a term of seven years, and not for a prescriptive period of seven years. Otherwise, the amendment would have been unnecessary. CBF further argues that the amendment was ineffective because Sale was not a party to it. CBF notes that when Sale transferred his interest in the royalty deed, he did not mention or reference the amendment, and that he belatedly participated in the amendment through his recognition and confirmation, which he executed after he had conveyed the mineral royalty.
Pretermitting the issue revolving around the meaning of “term” in the original conveyance, we address the effect of the amendment. CBF does not argue that the amendment, if otherwise deemed effec *5 tive, did not establish a regime of seven-year nonuse prescription over the mineral royalty.
La. C.C. art. 1889 provides that a transfer of immovable property must be made by authentic act or by act under private signature. It further provides that an instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located.
La. C.C. art. 1837 states that an act under private signature need not be written by the parties, but must be signed by them. We note that Comment B to that article provides:
This Article is not intended to change the jurisprudential rule that an act under private signature is valid even though signed by one party alone, when the party who signed it asserts the validity of a commutative contract contained in the writing |sagainst a party who did not sign it but whose conduct reveals that he has availed himself of the contract. Thus, in Succession of Jenkins [■v. Dykes'], 91 So.2d 416 (La.App. 2nd Cir.1956), a transfer of immovable property in return for the transferee’s assumption of a mortgage was held enforceable against a transferee who had not signed the act of transfer, but who had later granted a mineral lease on that property.
The supreme court suggested in Cerami v. Haas, 195 La. 1048, 197 So. 752 (1940), that the mere recordation of an instrument on the part of a vendee, grantee, or offeree was clearly an act indicating an acceptance of the contract. Succession of Jenkins, supra.
One issue in Neblett v. Placid Oil Co., 257 So.2d 167 (La.App. 3d Cir.1972), writ denied, 260 La. 1121, 258 So.2d 376 (1972), was whether legal effect should be given to a correction deed when the correction deed was executed only by the original vendor and was not signed by the widow of the original vendee. The correction deed described a tract of land different from the one in the original deed.
The Neblett court recognized the jurisprudential rule that the acceptance of a contract need not be expressed in it, nor that the act be signed by the party in whose favor it was executed, but only that acceptance is shown by some act clearly indicating it. It concluded that the widow accepted the correction deed since within a year after it was executed she sold the property described in the correction deed.
CBF attempts to distinguish Neblett by arguing that the trial court in this matter noted that defendants had failed to identify any actions indicating acceptance. CBF urges that Sale’s acceptance through his recognition and confirmation should have been demonstrated while Sale Rstill had his royalty interests. CBF contends that the recognition and confirmation was another impermissible attempt to modify the royalty deed unilaterally.
The amendment was clearly to Sale’s benefit as it extended the potential life of the royalty interest without any additional consideration or obligations imposed on the grantee. Sale conveyed the royalty interest one day after the amendment was executed and recorded. We note that the amendment and the conveyance to Story were passed before the same notary.
The public records doctrine is founded upon our public policy and the social purpose of assuring the stability of land titles. Camel v. Waller, 526 So.2d 1086 (La.1988). The doctrine does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded. Id. It is essentially a negative doctrine. Id. Third persons are not *6 allowed to rely on what is contained in the public records but can instead rely on the absence from the public record of those interests that are required to be recorded. Id.
La. C.C. art. 8338 provides, in part:
The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
(1) An instrument!'that transfers an immovable or establishes a real right in or over an immovable.
[[Image here]]
(4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.
| inSale evidenced his acceptance by conveying his mineral rights one day after they had become subject to the amendment. Although the amendment was not referenced in the conveyance to Story, Story acquired the mineral rights in reliance upon the rights established by the amendment which had been recorded. Sale executed his instrument of recognition and confirmation approximately 50 days after conveying the mineral rights.
Based on the foregoing, the trial court erred in granting CBF’s motion for summary judgment. That motion should have been denied, and the defendants’ cross-motion should have been granted.
CBF argues that the appeal of the supplemental judgment was frivolous. We disagree.
CBF also asks that the original appeal be converted to a devolutive appeal because defendants did not comply with the terms of the supplemental judgment. Defendants do not object to converting the original suspensive appeal to a devolutive appeal. We grant that request.
DECREE
At Cecil Blount Farms’ costs, and except as to the dismissal of Ann Berson, the judgments are reversed and judgment is entered granting appellants’ cross-motion for summary judgment. The appeal is converted to a devolutive appeal.
REVERSED.

. MAP00-NET would later acquire these interests.

. Ann Berson would be dismissed from the lawsuit with prejudice after the parties stipu *3 lated that the royalty interests at issue were her husband Joel Berson’s separate property.