Judgment rendered October 1, 2025.
Application for rehearing may be filed within the delay allowed by Art. 2166, La. C.C.P.

No. 56,465-CA
No. 56,466-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 56,465-CA

COLBY STAFFORD
HARRINGTON
            Plaintiff -Appellant

versus

TOWN OF BENTON, CORI
DESHA HARRINGTON,
individually and as trustee of the
Patrick Hough Harrington Trust,
and as succession representative
of the succession of Patrick
Hough Harrington, PATRICK
JORDAN HARRINGTON,
individually and as trustee of the
Patrick Hough Harrington Trust,
MARK ALLEN
HARRINGTON, GAELAN
SCOTT HARRINGTON,
JONAH BLAKE
HARRINGTON, and ESTATE
OF PATRICK HOUGH
HARRINGTON
            Defendants -Appellees

No. 56,466-CA

SUCCESSION OF PATRICK
HOUGH HARRINGTON

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court Nos. 169442 and P-17957

Honorable Michael Nerren, Judge

* * * * *

| | |
|---|---|
| SHUEY SMITH, LLC<br>By: Richard E. Hiller | Counsel for Appellant,<br>Colby Stafford<br>Harrington |
| WEEMS, SCHIMPF, HAINES & MOORE<br>By: Kenneth P. Haines<br>    Kyle A. Moore | Counsel for Appellees,<br>Cori Desha Harrington<br>and Patrick Jordan<br>Harrington and the Estate<br>of Patrick Hough<br>Harrington |
| MARK ALLEN HARRINGTON | In Proper Person |
| GAELAN SCOTT HARRINGTON | In Proper Person |
| JONAH BLAKE HARRINGTON | In Proper Person |

* * * * *

Before PITMAN, MARCOTTE, and ELLENDER, JJ.

**ELLENDER, J.**

This is an intrafamily dispute over the ownership of the family home and property, 6.84 acres on Old Bellevue Road in Benton, La.  Colby Harrington appeals a judgment that rejected his claim to annul a tax sale, quiet title, and declare him the owner of the property, and instead declared the succession of his late father the owner.  We affirm.

## FACTUAL BACKGROUND

Colby's father, the late Pat Harrington, was an attorney in Shreveport.  In 2002, Pat bought the property, as his separate property, by a cash sale deed, Exhibit **JA-16**, for "good and valuable consideration."[1]  No cash was transferred, no title examination required or made, no warranty of merchantable title given, and the deed recited that part of the title was a tax sale deed.  Pat immediately placed a small mobile home on the front of the property and moved in with his wife, Cori, and their five children (including Colby) plus one child from a prior marriage.  At some point they began building a large house on the property, set back far from the road, but they did so in phases, always paying cash, never applying for a mortgage.  The project took several years.  Meanwhile, Pat's health declined: he was diagnosed with cancer and placed in hospice, and passed away in April 2011, shortly before the house was completed.  Nonetheless, Cori and the children moved into the house; they testified they have occupied it ever since.

In February 2023, Colby, who was then 32 years old, filed this suit to declare the tax sale in Pat's chain of title null and void for lack of notice, to

_____

[1] A summary of each joint exhibit is given in the "Trial Evidence" section of this opinion, and many of the documents are referred to by exhibit numbers herein.

quiet the title, and to declare him (Colby) the true owner of the property. He alleged that the 1995 tax sale (Exhibit **JA-13**) was deficient in that notice was sent to the tax notice party, "Estate of Grandison Thomas," but was returned "unclaimed," and nobody made the effort to find and notify the heirs of Grandison Thomas. He further alleged that, in 2008, when he was 18 years old, *he* bought the property, by cash sale deed from Edgar Booth Jr., for "good and valuable consideration." That deed (Exhibit **JA-18**) recited that Booth and his family had maintained uninterrupted possession of the property since acquiring it, in 1990. Colby named as defendants his mother, Cori, individually, as trustee of a trust Pat had created, and as Pat's succession representative; the estate of Pat; Colby's four brothers; and the town of Benton. Colby applied for, and received, pauper status to proceed without prepayment of costs.

In an amended petition, Colby dropped the claim against the town. He later filed a motion for summary judgment specifically on his claim to quiet the title to this property.

In August 2023, Colby reopened his father's succession, which had resulted in a prior, 2012 judgment of possession in favor of Cori. His amended answer in the succession proceeding raised allegations similar to those raised in the first action; the two matters were consolidated in early 2024.

Through responsive pleadings and documents offered for and against Colby's motion for summary judgment, it was revealed that Cori and the other children were unaware that Colby had "bought" the property in 2008. In fact, the cash sale deed by which he claimed title purported to bear Cori's

signature as notary, but she denied she notarized it or had any knowledge of its existence.

## TRIAL EVIDENCE

The matter came to trial in June 2024, on the bifurcated issue of ownership of the property. The district court stated at the start of trial that if the tax sale in Pat's chain of title was good, then Pat's estate was the owner, and the case was over. Counsel for Colby announced he would not call any witnesses but, rather, build a "paper case" around the documents. The parties stipulated to 18 of these, admitted as Exhibits **JA-1** through **JA-18**. Unlike Colby, Cori called four witnesses – Colby on cross-examination, herself on direct, and two of the brothers.

Below is a list of the documents, with explanatory notes from the witnesses' trial testimony (in parentheses).

**JA-1 Sale of lots** (actually a credit sale deed), April 22, 1886, from L.D. Arick to Grandison Thomas, for $150, with "full guarantee of title" and "rights in warranty against previous lenders[.]" (After this, there is no disposition from Grandison Thomas – no sale, no donation, no judgment of possession.)

**JA-2 Sale deed**, February 9, 1954, from Irene Thomas Blackman, "being a daughter of Grandison Thomas, deceased," to Mercy Fredrick, of 1/3 interest in the property, for $100 and other good and valuable consideration, "being services and care rendered the grantor herein by this grantee." (As noted, there was no judgment of possession in favor of Ms. Blackman, and no evidence regarding what became of Ms. Fredrick.)

**JA-3 Right of Way**, December 3, 1954, from "Grandison Thomas Estate," signed by Irene Thomas, to SWEPCO for a powerline servitude. (The district court commented that **JA-2** could not have meant anything if, less than one year later, the estate was granting a powerline servitude on the property.)

**JA-4 Cash sale deed**, April 27, 1988 (not filed until April 27, 1989), from Linda Kay Thomas, of Rochester, New York, to Cindy Lou Sales of Shreveport Inc., conveying all rights "to which said vendor may be entitled," for $500.

3

**JA-5 Cash sale deed**, April 27, 1988 (also not filed until April 27, 1989), from Hattie Cross Thomas, of Shreveport, to Cindy Lou Sales of Shreveport Inc., conveying all rights "to which said vendor may be entitled," for $1,500.

**JA-6 Cash sale deed**, January 26, 1987 (filed April 27, 1989), from Delphine Diane Thomas Baker, of Shreveport, to Cindy Lou Sales of Shreveport Inc., conveying all rights "to which said vendor may be entitled," for $200.

**JA-7 Cash sale deed**, April 22, 1987 (filed April 27, 1989), from Tommie Lee Thomas, of Shreveport, to Cindy Lou Sales of Shreveport Inc., conveying all rights "to which said vendor may be entitled," for $800.

**JA-8 Cash sale deed**, September 24, 1987 (filed April 27, 1989), from Terry Lee Thomas, of Shreveport, to Cindy Lou Sales of Shreveport Inc., conveying all rights "to which said vendor may be entitled," for $300.

**JA-9 (Untitled act of donation)**, April 11, 1987 (filed April 27, 1989), from Eller Thomas Rhodes and Arana Thomas Merritt, both of Bossier Parish, to Hattie Cross Thomas, of Shreveport, in consideration for "the natural love and affection" for their sister-in-law, Hattie Thomas.

**JA-10 Cash sale deed**, October 14, 1988 (filed April 27, 1989), from Larry Thomas, of Rochester, New York, to Cindy Lou Sales of Shreveport Inc., conveying all rights "to which said vendor may be entitled," for $500.

**JA-11 Cash sale deed**, December 4, 1990 (filed July 24, 1991), from Cindy Lou Sales of Shreveport Inc. to Edgar Waldo Booth Jr., conveying "all of his interest which is no less than 1/3," for $5,000. (Cindy Lou Sales is represented here, for the first time, by Davette Kemp, whom Cori identified as her late husband's bookkeeper.)

**JA-12 Procès-verbal**, May 8, 1995, in which the Bossier Parish sheriff announced the property would be auctioned for nonpayment of taxes on May 24, 1995. The delinquent taxpayer is listed as "Grandison Thomas Estate, c/o Pat Harrington, 711 Texas St., Shreveport LA 71101." Attached is a copy of the certified mail receipt marked "Return to Sender / Reason checked / ☑ Unclaimed."

**JA-13 Tax sale**, May 31, 1995, from Bossier Parish sheriff to William and Debbie Jorden, of Benton, for unpaid taxes and costs of $142.72. (Cori testified she had never met either of the Jordens.)

4

**JA-14 (Untitled partition of community)**, September 14, 1999, Debbie Jorden conveyed her interest in the property to her ex-husband, William Jorden.

**JA-15 Cash sale deed**, September 28, 1999, from William Jorden to 707 Benton Road Corp., for $750. The purchaser, 707 Benton Road Corp., was represented by Donald L. Wilson. (Cori testified she knew Don Wilson, he was a title attorney, and he never asked the Harringtons to leave the property.)

**JA-16 Cash sale deed**, September 13, 2002, from 707 Benton Road Corp. to Pat Harrington, for "good and valuable consideration * * * the significance of which third parties can rely upon." The deed referred to Cori but stated the property was going to Pat's separate estate. The deed also recites, "no title examination was required, none was made and no warranties of merchantable title * * * are made herein[,]" and the parties "acknowledge that part of the title to the subject property is a Tax Sale Deed title."

**JA-17 Oil, gas & mineral lease**, November 9, 2006, from Pat Harrington to KCS Resources.

**JA-18 Cash sale deed**, November 28, 2008, from Edgar Waldo Booth Jr. to Colby, at the mailing address of 500 Old Bellevue Road, Benton, for $100 cash "and other good and valuable consideration, the receipt of which is hereby acknowledged." The deed also recites, "The vendor has had uninterrupted possession of the property since the vendor acquired said property." The deed is signed by Booth and his wife, by two witnesses (one of them named Carl Henderson), but not by the purchaser, Colby. (The deed is apparently notarized by Cori, but Cori testified emphatically that she did *not* notarize this document; she was unaware of it until this litigation arose. She also did not see Henderson witness it. Colby testified that he knew Henderson: he played football with two of Henderson's sons, and Henderson and Pat "worked as a team" buying and selling real estate. Colby did not call Henderson to testify.)

Called on cross-examination, Colby testified he was just a junior in high school when he bought the property, **JA-18**, so he did not precisely recall the event, such as where it was signed and by whom, and he agreed he

5

did not sign the deed.[2]  He could not recall how much he paid for the property, and admitted he contributed nothing to the cost of building the house.  He also admitted that his family had lived there, first in the trailer and then in the house, since about 2002.

On direct examination, Cori testified the family had lived on the property since 2001, first in the trailer and then in the house.  She also provided the details about some of the exhibits noted above.  She was emphatic that nobody, either from the Grandison Thomas family, Edgar Booth Jr., or Don Wilson, had ever claimed ownership or asked her to leave.

Two of Colby's brothers, Jonah and Patrick, confirmed the family had lived on the property since 2001 or 2002; nobody had ever questioned their ownership.

### ACTION OF THE DISTRICT COURT

After taking the case under advisement, the district court ruled orally.  It first stated that Colby's deed, **JA-18**, was in fact a quitclaim, and fairly standard (by contrast, Cindy Lou Sales' sale to Booth, **JA-11**, was a true cash sale); the issue was whether it gave Colby any interest in the property.  The court rejected the validity of Colby's deed: Colby could not remember seeing his seller, Booth, that day, and Cori testified her signature on the notary line was not genuine.

Regarding Pat's deed, **JA-16**, the court found no evidence as to "what happened in the tax sale," and not enough evidence to rule the tax sale procedure was invalid.  The court therefore concluded the property belonged to the succession.

---

[2] Although he was only a junior in high school, he was 18 years old at the time, as revealed by data provided in his in forma pauperis affidavit.

The court later signed a partial final judgment declaring (1) Colby's cash sale deed was invalid, (2) the tax sale in Pat's chain of title was valid, and the property belonged to his estate, and (3) the judgment was immediately appealable.

Colby took this devolutive appeal, raising three assignments of error. He has also filed peremptory exceptions of prescription and nonjoinder, for the first time in this court.

## DISCUSSION

### *Validity of Colby's Cash Sale Deed*

By his first assignment of error, Colby urges the court committed reversible error when it concluded, after trial, that the Colby Harrington deed was invalid because the notary did not sign it. He contends the court failed to apply La. C.C. art. 1834, under which a document that fails to meet the requirements of an authentic act may still be valid as an act under private signature, and this error justifies de novo review. Title may be conveyed under private signature, merely by the signatures of the parties. La. C.C. art. 1836; *Succession of Davisson*, 50,830 (La. App. 2 Cir. 12/22/16), 211 So. 3d 597, *writ denied*, 17-0307 (La. 4/7/17), 218 So. 3d 111. In fact, he argues, the signature of the recipient is not required; acceptance may be inferred by the recipient's acts. *Mitchell v. Blount*, 448 So. 2d 681 (La. 1984); *Cecil Blount Farms LLC v. MAP00-Net*, 47,246 (La. App. 2 Cir. 7/25/12), 104 So. 3d 1, *writ denied*, 12-2263 (La. 1/11/13), 107 So. 3d 614. He concludes that even if the notary's signature was no good, Colby confirmed the signature of the seller, Booth, and accepted the sale by paying the price and asserting his ownership; hence the deed is valid as an act under private signature.

7

A transfer of immovable property must be made by authentic act or by act under private signature. La. C.C. arts. 1839, 2440; *Hidden Grove LLC v. Brauns*, 22-00757 (La. 1/27/23), 356 So. 3d 974. Colby does not contest the district court's finding that his cash sale deed, **JA-18**, fails as an authentic act: the purported notary, Cori, testified that the signature on the document was not hers, and no evidence contradicted this. Rather, he contends his deed is valid as an act under private signature, under La. C.C. art. 1834. The district court examined **JA-18** to see if it qualified as an act under private signature; the court's finding is factual in nature and is subject to manifest error review. *Hansen v. River Cities Disposal Co.*, 51,700 (La. App. 2 Cir. 11/15/17), 245 So. 3d 213.

An act under private signature need not be written by the parties, but it must be signed by them. La. C.C. art. 1837; *Succession of Davisson*, *supra*. An act under private signature need not be signed by both parties; it is valid "when the party who signed it asserts the validity of the commutative contract" against a party who did not sign it "but whose conduct reveals that he has availed himself of the contract." La. C.C. art. 1837, Revision Comment (b) (1984); *Cecil Blount Farms LLC v. MAP00-NET*, *supra*. The vendee under private signature may avail himself of the transfer by the "mere recordation" of the instrument, *Cerami v. Haas*, 195 La. 1048, 197 So. 752 (1940); by executing a correction deed, *Neblett v. Placid Oil Co.*, 257 So. 2d 167 (La. App. 3 Cir. 1972), *writ denied*, 260 La. 1121, 258 So. 2d 376 (1972); or by other acts "clearly indicating" acceptance, *Succession of Davisson*, *supra*.

We have closely examined Colby's cash sale deed, **JA-18**, and agree with the district court that it does not meet the requirements of an act under

8

private signature. As stated by the Comment to Art. 1837 and by this court in *Cecil Blount Farms*, *supra*, an act signed by one party alone is valid when (1) *the party who signed it* asserts the validity of the contract, and (2) the party *who did not sign it* reveals acceptance thereof by conduct. The party who signed **JA-18**, Booth, did not testify at trial, file any pleadings in the case, or assert the validity of the contract in any way. For this reason alone, **JA-18** cannot pass muster as an act under private signature.

We agree with Colby's assertion that the party who did not sign **JA-18**, Colby, performed some acts of acceptance by filing it in the Bossier Parish conveyance records nearly one year later and by filing this suit over 13 years after that. However, Colby could not recall if he actually paid the $100 stated in the cash sale deed. Critically, he made no practical assertion of his ownership: he never told his father, who was still alive at the time, that he had bought the property out from under him; he never disclosed the purchase to his mother or any of his siblings; he never asked them to leave "his" property; he never registered as a tax notice party. He candidly admitted he never contributed anything, not even a dime, to the construction of the large house on "his" property. He was ambiguous about the circumstances of the sale, chalking it up to "intuition" and admitting he was not present when the other people signed the document. On this evidence, the district court was not plainly wrong to find that Colby's conduct did not amount to an assertion of ownership, and that **JA-18** fails as an act under private signature.

This assignment of error lacks merit.

### Validity of Pat's Tax Sale Deed

By his second assignment, Colby urges the court committed reversible error when it concluded, after trial, that the tax sale was valid, when it was undisputed that co-owners who had an interest in the property never received the requisite notice of the tax sale. He shows that mortgagees have due process rights in tax sales, *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983), and that notice of tax sale is paramount, La. Const. art. VII, § 25(A); *Tietjen v. City of Shreveport*, 09-2116 (La. 5/11/10), 36 So. 3d 192. Notice was required to be sent to "each taxpayer," under the law as it provided in 1995, La. R.S. 47:2180 (B); *Smitko v. Gulf South Shrimp Inc.*, 11-2566 (La. 7/12/12), 94 So. 3d 750.[3] When the notice of tax sale is returned unclaimed, the tax collector must take additional, reasonable steps to notify the tax debtor, and failure to do so is fatal to the tax sale, *C & C Energy LLC v. Cody Invs. LLC*, 09-2160 (La. 7/6/10), 41 So. 3d 1134. Factually, Colby shows that in the procès-verbal, **JA-12,** notice was sent only to "Grandison Thomas Estate," care of Pat Harrington, and this was returned on May 27, 1995; he argues that *Booth* still had some interest in the property at this time, and the tax collector could have easily found Booth's address, but this did not happen. Colby concludes this nullifies the tax sale and, with it, Pat's title to the property. He also suggests that his claim to annul the tax sale does not prescribe because that sale was absolutely null, *Security First Nat'l Bank v. Murchison*, 98-1225 (La. App. 3 Cir. 3/17/99), 739 So. 2d 803, *writ denied*, 99-1713 (La.

---

[3] R.S. 47:2180 was repealed in 2008 and reenacted, with major revisions, as R.S. 47:2121, et seq. It currently calls for notice to "each tax notice party," defined as "each tax debtor and any person requesting notice," R.S. 47:2122 (18). This version has also been repealed, 2024 La. Acts No. 774, effective January 1, 2026, but the new R.S. 47:2122 (18) retains the current definition of "tax notice party."

10/15/99), 748 So. 2d 1147; *Jackson v. Bernstein*, 39 So. 2d 120 (La. App. 2 Cir. 1948).

The sale of property for nonpayment of taxes is an action that affects a property right protected by the 14th Amendment. *Mennonite Bd. of Missions v. Adams*, *supra*. In *Mennonite*, the court recognized that the mortgagee has a legally protected property interest and is entitled to notice reasonably calculated to apprise the mortgagee of a pending tax sale. *Id*. at 798, 103 S. Ct. at 2711. As a minimum constitutional precondition to such a proceeding, notice must be sent by mail or other means certain to ensure actual notice if the party's name and address are reasonably ascertainable. *Id.* at 800, 103 S. Ct. at 2712. The fundamental objective is to provide notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Id.*, citing *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950); *Tietjen v. City of Shreveport*, *supra*; *Adair Asset Mgmt. LLC v. Turney*, 50,574 (La. App. 2 Cir. 5/4/16), 195 So. 3d 501, *writ denied*, 16-01347 (La. 11/7/16/), 209 So. 3d 97.

*Mennonite* is not the only authority; La. Const. art. VII, § 25, also requires the tax collector to provide notice to a delinquent taxpayer, and La. R.S. 47:2180 established the manner in which notice of delinquencies in immovable property taxes should be provided to comply with Art. VII, § 25. At the time of **JA-13**, R.S. 47:2180 provided, in pertinent part:

### § 2180. Immovable property, notice of delinquency

A. On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been

11

assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.

B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor's property in the advertising required for unknown owners in Subsection C of this Section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal or domiciliary service, he shall make out a procès verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made.

C. The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all unknown owners of assessed immovable property situated in his parish, and to nonresident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish, or if there be none published in the parish, then such notice shall be given in the manner provided by law for judicial sales.

To give property owners reasonable notice so as not to deprive them of constitutionally protected property rights, the tax collector was required to provide "each taxpayer" with written notice, sent by certified mail, return receipt requested, alerting each record owner of the immovable property that the owner's failure to pay the taxes within 20 days will result in sale of the property. *Lewis v. Succession of Johnson*, 05-1192 (La. 4/4/06), 925 So. 2d 1172; *Robertson v. Stonecreek Builders LLC*, 50,798 (La. App. 2 Cir.

12

8/10/16), 200 So. 3d 851. Tax sales are presumed valid, and a tax sale deed shall be prima facie evidence of the validity of the tax sale. La. Const. art. VII, § 25(A)(1); *Lewis v. Succession of Johnson*, *supra*; *Robertson v. Stonecreek Builders*, *supra*. Interpreting this statute in terms of due process requirements, courts have repeatedly held that when the tax collector sends notice to the known, correct address of the tax debtor with return receipt requested, he has made a reasonable effort, and the tax sale will not be invalidated simply because the debtor did not actually receive the notice. *Pardon v. Moore*, 39,949 (La. App. 2 Cir. 8/17/05), 908 So. 2d 1253, and citations therein.

The Estate of Grandison Thomas was the only taxpayer listed on Bossier Parish's rolls; the record is clear that notice was sent to the Estate, care of Pat Harrington. This satisfied the notice requirement of R.S. 47:2180 (A). The notice then went unclaimed, and the sheriff advertised the property, in accordance with R.S. 47:2180 (B). The property was sold for past due taxes, to the Jordens. The procedure followed all the notice requirements of La. Const. art. VII, § 25, and R.S. 47:2180.

Colby further argues that, once the initial notice was returned unclaimed, the tax collector had to take "additional reasonable steps to notify the tax debtor," and any failure to do so rendered the tax sale null. *Lewis v. Succession of Johnson*, *supra; Vincson Inc. v. Ingram*, 2001-2655 (La. App. 1 Cir. 11/8/02), 835 So. 2d 813; *Childress v. Johnson*, 387 So. 2d 1217 (La. App. 1 Cir.), *writ denied*, 393 So. 2d 744 (1980). On close review, we find the record supports the district court's conclusion that the tax collector took adequate steps, by the process described in the procès-verbal and the tax sale, to notify any other owners of the imminent tax sale.

13

After Grandison Thomas bought the property, in 1886, there is no disposition of the property by him or judgment of possession adjudicating it to anyone. There are subsequent acts, such as the 1954 sale deed, **JA-2**, from Irene Blackman, who purported to be the daughter of Grandison Thomas, of one-third interest in the property; a sequence of cash sale deeds, **JA-4** through **JA-10**, from the late 1980s in which people named Thomas quitclaimed their interest in the property to Cindy Lou Sales; and a cash sale deed, **JA-11**, in which Cindy Lou Sales sold "no less than 1/3 interest" to Booth. However, there is no evidence that any of these vendors had any legal connection to Grandison Thomas; providing notice to any of these persons would have been speculative and not reasonable. Moreover, the whole purpose of *Mennonite* notice is to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. None of the parties involved in these transactions, **JA-2** through **JA-11**, has ever asserted an interest in the property since the tax sale. On this evidence, the district court was entitled to find the notice was adequate under *Mennonite* and under R.S. 47:2180.

This assignment of error lacks merit.

### *Other Arguments*

By his third assignment of error, Colby argues, in the alternative, that if the court found the property belonged to Pat's estate by acquisitive prescription, this was error because Pat was a possessor in bad faith, owing to the recitations in his cash sale deed, **JA-16**. The district court, however, did not use the concept of acquisitive prescription, but rather found the tax sale to the Jordens was valid, a finding which we have declared not plainly wrong. We therefore pretermit any consideration of acquisitive prescription.

14

By peremptory exception raised in this court, Colby contends Cori's claim to annul Colby's deed is prescribed by five years, under La. C.C. art. 2032. However, Cori filed no action, principal or incidental, seeking to nullify Colby's deed; she merely raised the issue of its validity, citing his burden of proof. The district court found he did not meet his burden, and we have declared this not plainly wrong. This peremptory exception is without merit and is denied.

By another peremptory exception raised in this court, Colby urges nonjoinder of parties necessary for just adjudication, under La. C.C.P. art. 641. He contends that Mercy Fredrick and the Estate of Grandison Thomas are needed for such adjudication. In light of the district court's finding that the tax sale deed to the Jordens, **JA-13**, was valid, and the subsequent cash sale deed to Pat, **JA-16**, was also valid, there is no substance to the argument that Mercy Fredrick and the Estate of Grandison Thomas have an interest relating to the subject matter of the action. Moreover, if Colby had felt these parties were needed for just adjudication, he could have easily joined them, but he never did so. This peremptory exception is without merit and is denied.

## CONCLUSION

For the reasons expressed, the judgment is affirmed. All costs are to be paid by Colby Harrington, in accordance with La. C.C.P. arts. 5186 and 5188.

**AFFIRMED**.

15